PENDLETON BANKING COMPANY *v.* DEPARTMENT OF FINANCIAL INSTITUTIONS, ET AL.

[No. 1169S269. Filed Novembr 11, 1971.]

*G. Douglass Owens,* of Pendleton, *Robert D. Morgan, Smith, Morgan & Ryan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney Genreal, *David H. Kreider,* Deputy Attorney General, *Henry C. Ryder, Ronald R. Snyder, Roberts & Snyder,* of Indianapolis, for appellee, Citizens Bank.

GIVAN, J.—This is an appeal from a judgment of the Madison Superior Court affirming an order of the Department of Financial Institutions of the State of Indiana approving the application of the Citizens Bank of Elwood for the establishment of a branch bank in the town of Huntsville. The record discloses that Huntsville is an unincorporated town in Madison County, Indiana, located near the intersection of State Road 67 and State Road 9. The Citizens Bank of Elwood has its main office in Elwood, Indiana, approximately 20 to 25 miles from Huntsville. The population of Huntsville is about 250. It is located about four-tenths of a mile from the town of

Pendleton, where the appellant banking company is located. There are several small businesses located in Huntsville. However, there is no fire department, school or church located in the town. The appellant bank and three other banking institutions appeared in opposition to the application of Citizens Bank of Elwood at the hearing before the Department of Financial Institutions. After hearing the evidence, the Department approved the application. Appeal was then taken to the Madison Superior Court where the order was affirmed.

Shortly after filing in this Court the cause was remanded to the Madison Superior Court with an order to remand to the Department to make findings of fact as required by the case of *Department of Financial Institutions* v. *State Bank of Lizton* (1969), 253 Ind. 172, 252 N. E. 2d 248, 19 Ind. Dec. 296. The Department found that Huntsville is an identifiable community or town of homes and small business with a considerable number of people living in close proximity; that it is a town as distinguished from a rural settlement. The Department further found that there was no bank or trust company within the town; that the establishment of a branch bank within the town of Huntsville will be of an advantage and convenience to the public; that the petitioning bank has agreed to meet the capital and surplus requirements established as a condition to approval of a branch bank application; that no other bank is located within one-quarter mile of the proposed bank site; that the acquisition of real estate upon which the branch bank is sought to be located will not, when added to other real estate owned by the Citizens Bank, exceed the capital and surplus of such bank, actually paid in and unimpaired; that the proposed bank location is not within any other city or town for which the Indiana Branch Bank Act (Burns Ind. Stat., 1964 Repl., § 18-1707) affords home bank protection.

In affirming the order of the Department of Financial Institutions the Superior Court of Madison County found that at the hearing held before the Department of Financial Institu-

tions there was substantial evidence offered to establish the facts above recited. It is the ruling of the Superior Court of Madison County that is now before us on appeal.

Appellant first contends that the Department of Financial Institutions was without authority to grant the petition to establish a branch bank at Huntsville for the reason that Huntsville is not a town within the meaning of the standards set out in the 1953 Attorney General's Opinion No. 33, which opinion has been used as a guide for several years for the establishment of branch banks in suburban, unincorporated communities. Burns Ind. Stat., 1964 Repl., § 18-1707 provides in part as follows:

". . . any bank or trust company may open or establish a branch bank in any city or town within the limits of the county in which the principal office of such bank or trust company is located,. . . ."

The appellant argues that Huntsville is not a town within the meaning of the statute as interpreted by the aforementioned Attorney General's Opinion. In defining the word "town" the Attorney General first relied on Burns Ind. Stat., 1946 Repl., § 1-201 which reads in part as follows:

"The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute:

"First. Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

The Opinion of the Attorney General reads in part as follows:

". . . the weight of authorities seem to be in line with the following decisions:

"An unincorporated community, having three retail liquor saloons, a church, school, fire department, stores, boarding houses, about five hundred residences, various streets and alleys, and population of fifteen hundred to eighteen hun-

dred is a 'town' within the statute fixing amount of liquor license fees in towns of less than 2,000.

Pollard v. Montana Liquor Control Board (1942), 114 Mont. 44, 131 P. (2d) 974 to 976.

"The word 'town' as employed in a state in relation to fixing and operating railroad, means a collection of houses, larger than a village and smaller than a city, and has no reference to territory incorporated as a town under the township organization.

\* \* \*

It has also been held that the word 'town' implies the idea of a considerable number of people living in close proximity as distinguished from a rural settlement, but does not necessarily imply incorporation.

\* \* \*

"Therefore it is my opinion that the term 'town' used in the statute in question includes an unincorporated as well as an incorporated town. Any community which can be brought within the meaning of the word 'town' as herein defined would meet the statutory requirement as to the place where a branch bank may be established. The right to establish a branch bank is purely statutory and, of course, all other statutory requirements would have to be met."

It is appellant's contention that the facts observed in the Attorney General's Opinion set forth a rigid standard which must be met before an unincorporated area may be considered to be a town; that it must have a church, a school, fire department, retail stores, boarding houses and at least 500 residences located on various streets and alleys, and a population of from 1500 to 1800 persons. With this we do not agree. These are factors which the Attorney General took from the case of *Pollard* v. *Montana Liquor Board* cited in the above quote.

The Montana Court was considering a statute which fixed the amount of liquor license fees in towns of less than 2,000 people.

We cannot construe the Attorney General's Opinion to mean that a town must meet each and every one of the factors before it can be considered to be a town. We think it is clear that the statute as interpreted by the Attorney General uses the word "town" to include a compact

area having a number of persons living in close proximity to one another with some degree of business being transacted within the area. Each case requires a factual determination as to whether or not the area can be in fact considered a town. The scope of judicial review of an administrative decision is limited to a consideration of whether there is any substantial evidence to support the finding. *Department of Financial Institutions* v. *State Bank of Lizton, supra.*

In the case at bar the Department of Financial Institutions found that Huntsville was a town within the meaning of the act. There is evidence in the record that there are several businesses in the area; that the population of the area is growing, and that Huntsville is in need of a branch bank. Thus, there was evidence to support the finding of the appellee Department. Although there may have been conflicting evidence, a reviewing court cannot weigh such evidence. *Indiana Board of Pharmacy* v. *Horner* (1961), 241 Ind. 326, 172 N. E. 2d 62.

Appellant next claims the findings of the Department were arbitrary and capricious and, therefore, the Madison Superior Court's conclusion of law were in error. Appellant again refers to the 1953 Opinion of the Attorney General claiming that it was arbitrary and capricious to find that Huntsville was in fact a town when there was no evidence that it contained a church, a school or a fire department. As above set out these specific facts were unnecessary to support the findings that Huntsville is a town. We hold the findings were not arbitrary and capricious and were based upon sufficient evidence to establish the existence of a town.

Appellant also contends that the trial court's conclusions are contrary to the evidence. Appellant contends the evidence discloses that Huntsville is part of the community of Pendleton, in which a bank is already located.

Appellant also claims the evidence does not support the decision that the public convenience and advantage will be sub-

served by the establishment of the branch bank; and that it further shows that the establishment of a branch bank at Huntsville will jeopardize the welfare of the appellant bank contrary to the statute. With these interpretations of the evidence we cannot agree. So far as Huntsville being a part of the town of Pendleton, the evidence is clear that the two communities are almost one-half mile apart. The evidence is that Huntsville is not within the corporate limits of Pendleton. Aerial photographs submitted in evidence show a clear demarcation between the areas. This was all evidence before the trier of fact which supports its decision. This Court will not weigh that evidence. *Indiana Board of Pharmacy* v. *Horner, supra.* Our scope of review is limited to a consideration of whether there is any substantial evidence to support the finding. *Department of Financial Institutions* v. *State Bank of Lizton, supra.* In the instant case the evidence is sufficient to support the finding that Huntsville is a community separate from Pendleton. As to the public convenience and advantage to be derived from the establishment of the branch bank at Huntsville, there was testimony to the effect that the bank is needed; that there are businesses in the area, and that the area is rapidly growing. We, therefore, hold that there is sufficient evidence in the record to support the findings.

As to the claim that the branch bank at Huntsville will jeopardize the welfare of the appellant bank, the appellant relies upon Burns Ind. Stat., 1964 Repl., § 18-1707 which reads in part as follows:

"No branch bank may hereafter be established or located within one-quarter mile of another bank or trust company, nor at any location which will jeopardize the welfare of another bank or trust company already established in the city or town."

There is evidence from which it could be found that there is no bank within one-quarter mile of Huntsville, and that

Huntsville is not within the town of Pendleton. These facts have been found against the contentions of the appellant.

As above stated, we will not substitute our findings for the findings of fact of the Department supported by the evidence. We, therefore, conclude that the action of the Madison Superior Court in reviewing the findings of the Department of Financial Institutions of Indiana was correct.

The judgment is, therefore, affirmed.

Arterburn, C. J., DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 705.